IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DEBRA F. WESTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:06CV00063 |
| | ) | |
| RANDOLPH COUNTY COMMUNITY | ) | |
| COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**Sharp, Magistrate Judge**

This matter comes before the Court on motions for summary judgment (Pleading No. 29) and for sanctions (Pleading No. 31) filed by Defendant Randolph County Community College. Plaintiff Debra F. Weston has opposed the motion for summary judgment. Plaintiff's counsel has paid Defendant's attorney's fees in response to the motion for sanctions. (*See* Pleading No. 37.)

**Facts**

Plaintiff alleges age and race discrimination and retaliation in the non-renewal of her employment contract, as well as a racially hostile work environment. Plaintiff is a white female who was 49 at the time Defendant decided not to renew her contract. Plaintiff served as Director of Special Support Services at Randolph County Community College from

August 2001 through July 2004. (Pleading No. 30, Def.'s Br. in Supp. of Mot. for Summ. J., Ex. 1, Pl.'s Dep. at 14.) In that position, Plaintiff administered a TRIO grant from the Department of Education, to provide tutoring and other services to disadvantaged students. *Id.* Plaintiff supervised a counselor and a secretary. *Id.* at 16. During Plaintiff's employment, the counselor position was held by Joyce Branch, an African American female. *Id.* The secretary position was held by Christine Ireland then by Judy Pemberton, an African American female. *Id.* at 18. From the time Plaintiff was hired until mid-April 2004, her supervisor was Becky Megerian, a white female. *Id.* at 21.

Sometime in 2003, Plaintiff became dissatisfied with Branch and Pemberton. *Id.* at 20, 23, 29-31. According to Plaintiff, Pemberton refused to perform tasks as directed by Plaintiff, and instead bypassed Plaintiff for direction from Megerian. *Id.* at 20. Plaintiff also noted on Pemberton's evaluation that Pemberton needed training in reading and writing. *Id.* at 31. The difficulties between Plaintiff and her two underlings escalated between October 2003 and April 2004. Plaintiff claims that both Branch and Pemberton refused to follow Plaintiff's verbal or written instructions; Pemberton used the phone for personal calls at times when it was supposed to be free for tutoring; Pemberton used the computer for personal matters; and Branch kept her office door closed when it was supposed to be open for student counseling. *Id.* at 29-33, 36-37. Plaintiff began to feel as though she was performing the work of three employees and that the department's expectations of Branch and Pemberton were lower simply because of their race. *Id.* at 61-64.

-2-

Case 1:06-cv-00063-PTS   Document 38   Filed 09/18/07   Page 2 of 14

Plaintiff complained to Megerian about Pemberton and Branch, but never took formal disciplinary action because, according to Plaintiff, Megerian discouraged it. *Id.* at 30. At some point in early 2004, Plaintiff advised Megerian that she would not support renewal of Branch's contract. According to Plaintiff, Megerian's response was that the company "[didn't] fire blacks." *Id.* at 43, 46, 113-15. In March 2004, Plaintiff advised Megerian that Plaintiff would give Branch and Pemberton poor evaluations, and Megerian responded there would be no bad evaluations for anyone in her department. *Id.* at 29-30.

Beginning in the summer of 2003, efforts were made to address various issues involving Plaintiff, her job performance, and her personality conflicts with Branch and Pemberton. Plaintiff refused to attend at least two meetings scheduled by Megerian. *Id.* at 63, 67-68; Def.'s Br., Ex. 2. Plaintiff testified in her deposition that she realized by January 2004 that she was going to have to resign or she would be fired. *Id.* at 133. Plaintiff further testified that on March 30, 2004, Megerian informed Plaintiff that Plaintiff's contract was not going to be renewed. *Id.* at 128-29, 133. On June 26, 2004, Plaintiff received a letter concerning termination, which would be effective at the end of her contract – August 31, 2004. *Id.* at 137, Pleading No. 34, Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. 1. Plaintiff left at the end of July. (Pl.'s Dep. at 57, 158.) Meanwhile, in mid-April, Kimberlee Price had become Plaintiff's direct supervisor. *Id.* at 24, 126. Joyce Branch replaced Plaintiff as the Interim Director of Special Support Services until the position ultimately was filled by Dr. Carmen Tillery. *Id.* at 25-26; Pl.'s Br. in Opp'n, Ex. 3.

On October 5, 2004, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that the non-renewal of her contract was motivated by discrimination based on her age, her race or in retaliation for protected activity. Plaintiff also alleged that she was discriminated against because of her opposition to practices that she believed were in violation of the Americans with Disabilities Act. The EEOC issued Plaintiff a right to sue letter, and Plaintiff filed this action in the General Court of Justice, Superior Court Division, County of Guilford on December 21, 2005. Defendant timely removed the action to this court.

In her Complaint, Plaintiff alleges that Defendant discriminated against her based on her age and/or race, and retaliated against her for protected activity. She also appears to allege state law claims based on the same factual background. Plaintiff seeks damages and injunctive relief.

Defendant now moves for summary judgment and sanctions. (Pleading Nos. 20 and 31.) Plaintiff has opposed Defendant's motion for summary judgment. The motion for sanctions has been rendered moot by payment of Defendant's attorney fees by Plaintiff's counsel. (Pleading No. 37.)

**Discussion**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment has the initial burden of establishing that there is no genuine issue of fact and that he is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). After the movant meets this burden, the opponent must point to specific facts showing that there is a genuine issue for trial. *Id.* at 324.

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a "mere existence of a scintilla of evidence" is insufficient to overcome summary judgment. *Id.* at 249-50. When considering summary judgment motions, courts must view the facts and inferences therefrom in the light most favorable to the party opposing the motion. *Id.* at 255. Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted).

**A.     Timeliness of Plaintiff's EEOC Charge**

Defendant moves for summary judgment on the ground that Plaintiff's claims under the Age Discrimination in Employment Act ("ADEA") and for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") are time-barred

-5-

because Plaintiff failed to file her EEOC charge within 180 days of the alleged unlawful employment practice. For reasons set forth below, the Court finds that Defendant is entitled to judgment on this ground.

To initiate a claim under Title VII and the ADEA, one must first file a claim with the EEOC within 180 days of the alleged unlawful practice. *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d); *Price v. Litton Bus. Sys., Inc.*, 694 F.2d 963 (4th Cir. 1983) (applying 180-day filing period to ADEA claim). The Supreme Court has held that the filing period runs from the time at which the employee is informed of the allegedly discriminatory employment decision, regardless of when the effects of that decision come to fruition. *Delaware State Coll. v. Ricks*, 449 U.S. 250 (1980). In *Price*, the Fourth Circuit held that the 180-day period began to run as soon as Price was verbally advised of his removal, and that the company's efforts thereafter to find him other opportunities within the company did not extend, toll or otherwise alter the finality of the termination. *Price*, 694 F.2d at 964-65.

In her complaint, Plaintiff alleges only one act of discrimination: the non-renewal of her contract as Director of Special Support Services at Randolph County Community College. Plaintiff was informed unequivocally on March 30, 2004 that her contract would not be renewed. Plaintiff's counsel argues in briefing that on March 30, 2004, Plaintiff was told only that non-renewal of her contract was a "possibility." Counsel cites Plaintiff's deposition at pages 128-29 for this assertion. However, nothing in those deposition pages or elsewhere in the record supports the proposition that Plaintiff was informed only of a

-6-

"possibility." To the contrary, Plaintiff's own statements are that she was told in a straightforward, unconditional manner that her contract would not be renewed. (Pl.'s Dep. at 128-29, 133.) This decision was relayed to her by her direct supervisor, Becky Megerian. Indeed, Plaintiff testified in her deposition that she knew as early as January 2004 that she would either be fired or would resign. Plaintiff filed a charge with the EEOC on October 5, 2004, more than 180 days after her supervisor notified her on March 30, 2004, that her contract would not be renewed. In briefing, Plaintiff argues that there is a dispute of material fact concerning when the limitations period began to run because (1) Megerian was no longer her supervisor after April 15, 2004, (2) Plaintiff did not receive a letter confirming her non-renewal until June 26, 2004, and (3) between March 30 and June 26, 2004, efforts were made to find her another position at the college. In light of *Price*, Plaintiff's arguments fail. Megerian was still Plaintiff's supervisor on March 30 when she notified Plaintiff that her contract would not be renewed. That the college followed the verbal notice with written notice and/or attempted to find an alternative position for Plaintiff have no significance under the controlling authority. Plaintiff's federal claims under Title VII and the ADEA are untimely and should be dismissed.

  **B.  The Merits of Plaintiff's Discrimination and Retaliation Claims**

  In the alternative, Defendant argues that even if Plaintiff's claims under Title VII and the ADEA were found to be timely, they would fail on the merits.

### 1. Age Discrimination

The ADEA prohibits discrimination on the basis of age, and protects individuals over the age of 40. In the absence of direct proof, a plaintiff may rely on the evidentiary scheme articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Reeves v. Sanderson Plumbing Prods., Inc.,*, 530 U.S. 133, 142 (2000). Under *McDonnell Douglas*, a plaintiff makes a *prima facie* case of discrimination by showing that (1) she is a member of a protected class (over 40); (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) others outside the protected class were treated more favorably. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff is able to establish a *prima facie* case of discrimination, the burden shifts to the employer to proffer a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 802-03. The burden then shifts back to the plaintiff to prove discriminatory intent by a preponderance of the evidence, because the proffered reason is pretextual, i.e., not worthy of credence. *Id.* at 804.

Plaintiff qualifies as a member of the protected class under the ADEA because she was over the age of 40 on March 30, 2004, when her contract was not renewed. However, Plaintiff is unable to point to evidence that someone outside the protected class was treated more favorably than Plaintiff. It is undisputed that the individual who initially replaced Plaintiff (for a one-year period) was also over the age of 40 and was in fact older than Plaintiff. (Pl.'s Dep. at 27.) Thereafter, a younger person performed Plaintiff's duties.

Significantly, when Plaintiff was asked in her deposition whether her contract was not renewed because of her age, Plaintiff responded "[n]ot necessarily my age." (Pl. Dep. at 41.) This represents a concession and a failure of proof. Plaintiff's ADEA claim fails as a matter of law.

### 2. Race Discrimination

Plaintiff alleges two forms of race discrimination: that her termination was racially motivated and that she worked in a racially hostile work environment. On the disparate treatment claim, Plaintiff relies on the same *McDonnell Douglas* scheme discussed above. To establish a *prima facie* case of race discrimination, Plaintiff must establish that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) at the time of the action, she was performing at a level that met her employer's legitimate job expectations; and (4) her position was filled by a similarly situated applicant outside the protected class. In this case, Megerian (a Caucasian) made the decision not to renew the contract of Plaintiff (a Caucasian), and Plaintiff's position initially was filled by Branch (an African American) and then by Carmen Tillery (an African American).

Defendant argues that Plaintiff has not satisfied her *prima facie* and that even if she has, Defendant had a legitimate, non-discriminatory reason for non-renewal. Defendant points to evidence that Plaintiff refused on at least two occasions to attend meetings scheduled by her supervisor for the specific purpose of addressing work issues raised by Plaintiff. Undoubtedly, such undisputed evidence of insubordination constitutes a

-9-

legitimate, non-discriminatory reason for the employment decision to terminate Plaintiff. Accordingly, the burden shifts back to Plaintiff to show that the reasons offered by Defendant were not the true reasons, but were a pretext for discrimination. *Reeves*, 530 U.S. at 143. The only evidence to which Plaintiff points as evidence of pretext is Megerian's statement, months prior to the decision not to renew Plaintiff's contract, that the company "didn't fire blacks." Plaintiff's own deposition testimony provides no help to her; when asked if she believed her contract was not renewed because of her race, Plaintiff answered "[p]ossibly." (Pl.'s Dep. at 41-42.) Her statement reflects the speculative nature of her claim.

"The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves*, 530 U.S. at 153. To overcome a motion for summary judgment in such a case, a plaintiff must provide direct or circumstantial evidence "of sufficient probative force" to show a genuine issue of material fact exists as to this question. Plaintiff Weston relies on little more than bald or inapposite accusations to satisfy her burden. Defendant has pointed to a valid non-discriminatory reason for the decision not to renew Plaintiff's contract – insubordination – and Plaintiff fails to point to sufficient evidence to permit a reasonable juror to find that the stated reason is pretextual. Summary judgment on the racially disparate treatment claim is appropriate.

-10-

In addition to claiming that the decision not to renew her contract was racially motivated, Plaintiff maintains that she was subjected to a racially hostile work environment in violation of Title VII. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1984). To establish a racially hostile work environment, Plaintiff must show that the conduct at issue was (1) unwelcome; (2) based on race; (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) imputable to the employer. *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998). Whether an environment is hostile or abusive depends on factors such as the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The environment must be both subjectively and objectively offensive to be actionable under Title VII. *Id.* at 22.

Plaintiff urges that she "was treated less favorably during her employment than African American coworkers," had to perform her African American subordinates' work, and was denied authority to give her African American subordinates poor reviews. (Pl.'s Br. in Opp'n at 5.) Plaintiff does not appear to suggest that the environment was so hostile or abusive that she was unable to perform her job. *Id.* The treatment that forms the basis of Plaintiff's complaint does not amount to conduct "severe or pervasive enough to create an objectively hostile or abusive work environment" when judged from the perspective of a reasonable person. *Harris*, 510 U.S. at 21. The personality conflicts and tensions created

-11-

by perceived uneven work distribution simply do not rise to the level of severity required by the law. Rather, they are the type of expected aggravations of the workplace over which courts cannot be the monitor.

### 3. Retaliation

Finally, Plaintiff contends that the decision not to renew her contract was made in retaliation for her complaints about Pemberton and Branch not doing their jobs and for efforts she had made in the past to champion the rights of disabled students. Title VII prohibits discrimination by an employer against any individual because that individual has "opposed any practice made . . . unlawful" under Title VII. 42 U.S.C. § 2000e-3(a). To state a *prima facie* case of retaliation, Plaintiff must show (1) that she engaged in a protected activity; (2) Defendant took an adverse employment action against her; and (3) there was a causal connection between the two. *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997).

Title VII does not create a claim for every employee who complains about what they perceive to be favorable treatment of another race, particularly where it is not clear to the decisionmaker that the employee is alleging race discrimination. Even viewed in the light most favorable to Plaintiff, it is not clear that Megerian would have understood Plaintiff to be complaining of reverse discrimination. Further, to the extent that Plaintiff maintains that there is a causal link between the allegedly protected activity and the decision not to renew

her contract, the evidence on which she relies is too tenuous, from a temporal and a qualitative perspective, to create a genuine dispute of fact on causation.

Even assuming that Plaintiff has sufficient evidence to make a *prima facie* case of retaliation, Defendant has advanced a legitimate reason for its actions: Plaintiff's insubordination. *Beall*, 130 F.3d at 619. Accordingly, the burden shifts back to Plaintiff to show that the reason is mere pretext for retaliation. Plaintiff cannot show that the decision was mere pretext for retaliation for the same reasons that she could not make that showing with respect to her disparate treatment claim. On the evidence in the record, no reasonable juror could conclude that the proffered explanation is unworthy of credence.

### C. State Law Claims

Plaintiff also asserts a claim under North Carolina's Equal Employment Practices Act. N.C. Gen. Stat. § 143-422.2. For the same reasons that Plaintiff's federal claims fail, her claim under the state statute fails. *North Carolina Dep't of Correction v. Gibson*, 308 N.C. 131, 141 (1983) (adopting evidentiary standards and principles of law set forth in federal discrimination cases).

### Conclusion

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Pleading No. 29) be **GRANTED** and that Plaintiff's federal claims for age discrimination, race discrimination and retaliation and state law claim under the North Carolina Equal Employment Practices Act be dismissed with prejudice.

**IT IS FURTHER ORDERED** that Defendant's Motion for Sanctions (Pleading No. 31) is **DISMISSED** as moot.

A separate judgment will be entered contemporaneously with this Memorandum Opinion and Order.

/s/ P. Trevor Sharp<br>United States Magistrate Judge

Date: September 18, 2007